UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 2:19-CR-196 |
| v. | ) JUDGE GREER |
| | ) |
| DUSTIN AMOS BARNETTE | ) |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Dustin Amos Barnette, and the defendant's attorney, Jonathan Cave, have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the indictment:

   a) Count One, that is, conspiracy to distribute fifty grams or more of methamphetamine, its salts, its isomers, and salts of its isomers, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A).

   The punishment for this offense is as follows: A minimum mandatory 10 years up to life imprisonment, a fine of up to $10,000,000.00, a minimum of five years up to life on supervised release, and a $100.00 mandatory assessment fee.

2. In consideration of the defendant's guilty plea(s), the United States agrees to move the Court at the time of sentencing to dismiss the remaining count(s) against the defendant in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of

*DB*

the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

The defendant was a member of a drug trafficking organization led by co-defendant Joshua Davis during the time frame set forth in the indictment.

On May 7, 2017, Defendant and Steven Eisenmenger were approached by a Kingsport Police Officer. It was discovered that Defendant had a warrant for his arrest. Defendant was searched incident to arrest and the officer located pills, over a gram of crystal methamphetamine, and a glass pipe on his person.

On December 2, 2017, Defendant was arrested with Archie Ramsey by Kingsport Police Officers for possession of methamphetamine.

On October 29, 2018, a search warrant was obtained in Sullivan County, Tennessee for the content of three cellular phones that were found in the possession of co-defendant Brittany Sage during her arrest for possessing approximately three ounces of methamphetamine on October 13, 2018. Upon execution of this search warrant officers obtained multiple text messages between Defendant and Sage. On August 21, 2018, Defendant sent a text message to Brittany Sage asking if she had obtained more methamphetamine. Defendant then informed Sage that he had another quarter pound of methamphetamine if she wanted it. Sage sent a text to Defendant asking if he was bringing it to her. Defendant also sent a text to Brittany Sage asking if she knew of others that needed methamphetamine. Sage sent a text to Defendant stating that she had three ounces of methamphetamine. Defendant sent a text to Sage explaining he knew she had methamphetamine, and explained that he knew she was getting ready to sell the three ounces and that she would need more to sell.

DB

2

On August 22, 2018, Sage sent a text to Defendant stating she just woke up and asked if he obtained more methamphetamine. Defendant sent a text to Sage stating he did not and that he needed more. Sage sent text messages to Defendant stating that she would supply him and asking if he had money from previous sales. Sage sent a text to Defendant stating that she was in trouble and she should not have fallen asleep. When Defendant asked Sage what had happened, she explained that she fell asleep and four grams of methamphetamine went missing.

On December 22, 2018, Victor Ray was arrested in Asheville, NC, with approximately 1½ pounds of methamphetamine. The contents of three cells phones from Ray were downloaded. As a result, text messages between Ray and Defendant were obtained from October 13, 2018, in which Ray asked Defendant if he saw Kirsten Mulkey the previous night. Defendant replied that he saw her for a "reup."

On November 21, 2018, agents interviewed Kirstin Mulkey, who stated Defendant buys methamphetamine from Victor Ray, ranging from eight ball (3.5 grams) quantities to one quarter (1/4) ounce of methamphetamine.

On March 6, 2019, a search warrant was obtained in Sullivan County, Tennessee for two cellular phones belonging to Defendant. In response to the execution of this search warrant on Defendant's cellular phones, officers received the content of phones, which included multiple text messages between Defendant and Victor Ray. On December 14, 2018, Ray texted Defendant about money owed to Ray by Defendant for methamphetamine. Defendant sent a text message to Ray, telling him that he had his money, and that he would be there shortly to pay him back. Defendant also indicated that he received drug debt money. On the following day, Defendant sent a message to Ray wanting to meet so that he could obtain more methamphetamine.

*DB*

3

On January 3, 2019, James Curtis McDavid utilized his Facebook Messenger account to send a message to Defendant, asking if he had spoken with Terry Dishner. McDavid told Defendant that Joshua Davis was asking when he needed to see them about getting methamphetamine to sell to Dishner. On January 4, 2019 McDavid sent a message to Defendant telling him that Davis was on his way to deliver methamphetamine.

On January 8, 2019, agents observed a screenshot of a message Defendant sent through Facebook to Terry Dishner, asking if he had an ounce of methamphetamine he could borrow until he was resupplied.

On January 24, 2019, Terry Dishner allowed agents to search his cell phone. On the phone were Facebook messages between Dishner and Defendant. On one occasion, Defendant asked Dishner if he wanted a "ball" or "100." Dishner replied "100." On January 19, 2019, Defendant messaged Dishner, stating he needed an ounce. On January 20, 2019, Defendant sent a picture of what appears to be extremely large methamphetamine crystals on a digital scale and asked "U need."

On February 8, 2019, agents interviewed a CS at the Sullivan County Jail. CS stated that he had previously purchased one ounce of methamphetamine from Defendant for $450 at James Curtis McDavid's house.

On February 25, 2019, a Kingsport Police Officer observed Defendant sitting in the driver seat of a Toyota Camry at Pal's Restaurant on Lynn Garden Drive. Defendant left in the Toyota Camry. Shortly thereafter, Officers located the Toyota Camry at 108 Wampler Street and observed a syringe with needle in plain view. Officers searched the car and located, in a purse, approximately 43 grams of methamphetamine, digital scales, ten (10) plastic baggies, and a syringe with needle. A cell phone was also recovered from inside the car. Facebook messages between Dustin Defendant

4

DB

and Joshua Davis were recovered from the cell phone found inside the car. Facebook messages between Defendant and James Curtis McDavid were also recovered from the cell phone.

On February 26, 2019, agents interviewed Harvey Napier at the Duffield Southwest Regional Jail in Virginia. Napier said that Joshua Davis was supplying Defendant with methamphetamine.

On March 1, 2019, agents interviewed Mark Adam Burke at the Scott County Virginia Court House. Burke said he had seen Defendant with one and one half ounces of methamphetamine on one occasion. Burke also stated that he sold methamphetamine to Defendant on one occasion.

On March 4, 2019, agents interviewed Alyssa Blevins at the Kingsport Police Department. Blevins admitted to selling methamphetamine and stated that she was dating Defendant. Blevins said that Defendant was driving her car on February 25, 2019, and that he left his cell phone inside the car. Blevins also stated that Defendant was being supplied methamphetamine by Joshua Davis.

On April 2, 2019, an agent interviewed Steven Eisenmenger at the Sullivan County Courthouse. Eisenmenger said that Defendant was supplied methamphetamine by Joshua Davis.

On April 3, 2019, an agent interviewed Terry Dishner at the Federal Courthouse in Greeneville, TN. Dishner stated that he went to James Curtis McDavid's house to pick up five ounces of methamphetamine. Dishner said he went there to purchase from Defendant, but said Defendant left and McDavid went outside and obtained the five ounces of methamphetamine from Joshua Davis.

In a post-indictment interview of co-defendant Allen Neff indicated that he purchased methamphetamine from the defendant on two occasions. A few days prior to Neff's arrest on October 7, 2019, Neff purchased one-quarter of an ounce of methamphetamine from Defendant. On

DB

5

the day of Neff's arrest on October 7, 2019, Neff purchased 32 grams of methamphetamine from Defendant.

The defendant admits that he conspired with at least one other person to distribute methamphetamine as charged in the indictment, and that he is responsible for the distribution of at least 50 grams but less than 150 grams of methamphetamine (actual). The parties agree, for purposes of sentencing, that U.S.S.G. § 3C1.1 does not apply. *&3C1.2* DB (JSC)

*Parties agree that Sullivan Co. General Sessions Case No. 19-RK-58293 should run concurrent.* DB (JSC)

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) the right to plead not guilty;

    b) the right to a speedy and public trial by jury;

    c) the right to assistance of counsel at trial;

    d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    e) the right to confront and cross-examine witnesses against the defendant;

    f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

    g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

    a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

    b) The Court will impose special assessment fees as required by law; and

6    DB

Case 2:19-cr-00196-JRG-CRW Document 811 Filed 02/23/21 Page 6 of 11 PageID #: 5821

c)   The Court may order forfeiture as applicable and restitution as appropriate. No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7.   Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

*DB*

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

8  DB

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c)   The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11.   This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

12.   The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

10    *DB*

13. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

2.22.21
Date

By: _____
J. GREGORY BOWMAN
Assistant United States Attorney

2/20/21
Date

_____
DUSTIN AMOS BARNETTE
Defendant

2-20-2021
Date

_____
JONATHAN CAVE
Attorney for the Defendant

11